Christian, J.
This is a supersedeas to a judgment of the Circuit court of the city of Richmond. The case was submitted to that court without a jury, upon a case agreed, submitting the following facts in lieu of a special verdict.
That the defendant, William C. Yeaton, was indebted to the plaintiff, the Bank of the Old Dominion, in the .sum of $561.07, with interest on $111.07, part thereof, from 20th January 1862, and on $450, the residue thereof, from 81st January 1863. ' That upon the trial of the cause, the defendant tendered certain notes issued by the branch Bank ofthe Old Dominion, atPearisburg, equal in amount to the claim of the plaintiff; that the Bank of the Old Dominion was located in the city of Alexandria ; that the United States authorities took possession of the-city of Alexandria on the 24th day of May 1861, and held such possession until the close of the war ; that there was at no time a quorum of the board of directors -of the said Bank of the Old Dominion within the Confederate lines ' during the war ; that there was a majority and quorum of the said board of directors in the city of Alexandria certainly until the 29th October 1863 ; that the restored government of Virginia extended over the city of Alexandria during the war and at its close ; and that nearly all the directors of the Bank of the Old Dominion took the oath to support the restored government of Virginia and acknowledged its supremacy, repudiating the Richmond government; that the branch Bank of the Old Dominion at Pearisburg did business as a bank during *595 the war up to its close ; but a majority of its stockholders, both in number and amount of stock, resided in the city of Alexandria and States north of the Potomac; that neither the board of directors nor the stockholders of said hank ever accepted any change or modification of the charter of said bank subsequent to the 24th day of May 1861; that the said branch bank at Pearisburg, in obedience to an act of the General Assembly of the Richmond government, passed 29th March 1862, issued notes of denomination less than five dollars, and these notes were exchanged for Confederate States currency ; that said branch bank issued in said small notes the sum of $27,098.25 ; and that the said branch bank was indebted to the mother bank in the sum of $87,086.25 on the 7th day of June 1861, on account current, and that $51,000 of the stock of said branch bank was owned by said mother bank; that at the close of the war the mother bank received from the branch bank the following assets—$4,000 in gold, $10 in silver,- $1,184 in Virgiuia currency, and $6,060 in Bank of the Old Dominion notes.
The above being the facts agreed in lieu of a special verdict, the Circuit court of the city of Richmond entered a judgment for the plaintiff, for the sum of $561.07, the debt demanded in the declaration, with the lawful interest due on the same.
To this judgment a writ of error and supersedeas was awarded by this court.
The plaintiff in error is seeking by his plea of payment and tender, (with which he files the notes issued by the president and cashier of the branch bank of the Old Dominion at Pearisburg,) to discharge his obligation to-the Bank of the Old Dominion at Alexandria, in a currency greatly depreciated, if not utterly worthless, at the time of - the tender.
It is insisted by the learned counsel for the appellant, that he is authorized to make such tender in discharge *596 of his indebtedness to the Bank of the Old Dominion, by virtue of certain acts of the Legislature, assembled at Richmond, passed March 29th, 1862, and amended May 16th, 1862. *
The first named act authorized the several banks of circulation of this Commonwealth “ to issue notes of a less denomination than five dollars, and not- less than one dollar, including fractional amounts between one and five dollars, to an amount not exceeding ten per centum, of the capital of said banks respectively.” The act of May 16th, 1862, amendatory of the above recited act, contained the following provision : “Provided further, that if any bank be disabled from complying with this act by reason of its being within the lines of the enemy, each branch of such bank not within the lines of the enemy, is required (under certain penalties), within ninety days from the passage of this act, to issue such notes (that is, notes of less denomination than five dollars), to an amount equivalent to ten per centum, of the capital of such branch, independently of the bank of which it is a branch.,
It is contended that these acts are to be regarded as amendments of the charter of the Bank of the Old Dominion, made under the authority of the 53d section of ch. 58, of the Code (1860), which reserves to the Legislature “ the right to repeal, alter, or modify the charter of any bank at its pleasure.” And it is further insisted, that under that provision of the Code (sec. 16, chapter 58,) which provides that all notes of a bank “ shall be received in payment of debts due to the bank, whether contracted at the parent bank or the branch bank,” the notes issued by the branch bank at Pearisburg, and tendered with the plea of the plaintiff in error, ■ should have been received by the court below in full satisfaction of the debt sued upon.
It ifiust be observed in the first place, that the branch . bank at Pearisburg (which it is claimed was authorized *597 under tlie act of May 16th, 1862, to issue these notes), was not an independan! corporation operating under a charter of incorporation from the Legislature, but was simply the agent or branch of the Bank of the Old Dominion, subject to the charter of its principal or mother bank. So that this last named act cannot be any view regarded as a modification of the charter of a bank, according to the right reserved in the 53 section of ch. 58 of the Code.
The branch bank having no charter, but being subject to the charter of the mother bank, the reserved right of the Legislature “to alter, modify, or repeal the charter • of any bank,” can only be exercised by acts afiecting the charter of the mother bank.
It is clear that the proviso of the act relied upon, which authorizes a branch bank, independently of the mother bank, to issue notes of less denomination than five dollars, cannot be regarded as a modification of the charter of the Bank of the Old Dominion. The question then recurs, does the act of March 1862, as amended by the act of May 1862, independent of the proviso just referred to, operate as a modification of the charter of the Bank of the Old Dominion, under the reserved rights of the Legislature so as to bind that bank ?
It must be borne in mind that the city of Alexandria, where the Bank of the Old Dominion was located, was taken possession of by the United States authorities on the 24th May 1861, and that the restored government of Virginia extended its jurisdiction over that city during the war and at its close; and it is shown by the facts agreed, that a majority of the stockholders, both in number and amount of stock) resided in the city of Alexandria, in the District of Columbia, and in States north of the Potomac ;• and that neither the directors nor the stockholders of said bank ever accepted any modification or change of the charter of said bank subsequent to the 24th day of May 1861.
*598 The power of the Legislature “to repeal, alter or modify the charter of any bank at its pleasure,” must be held to be limited to this extent. It may certainly repeal the charter of any bank, but it cannot compel a bank to accept an amendment or modification of its charter. Nor is any such amendment or modification of its charter binding upon the bank without its acceptance. Banks are private corporations, created by a charter, or act of incorporation from the government, which, is in the nature of a contract, and therefore, in order to complete the creation of such corporations, something more than the mere grant of a charter is required ; that is, in order to give to the charter the full force and effect of an executed contract, it must be accepted. It is clear that the government cannot enforce the acceptance of a •charter upon a private corporation without its consent. Angel & Ames on Corporations, § 81; Rex v. V. Ch., &c., of Cambridge, 3 Burr R. 1647, 1661; 3 Hill’s R. 531. As was said in Ellis v. Marshall, 2 Mass. R. 279 : “That a man may refuse a grant, whether from the government or an individual, seems to be a principle too clear to require the support of authorities.” The terms offered by the government may, therefore, be acceded to or refused by the body corporate, and, if not acceded to, they have no binding effect. Dartmouth College v. Woodward, 4 Wheat. R. 518; 1 Greenl. 79; 10 Wend. R. 266; 1 Story’s Eq. 207. These well settled principles are everywhere recognized as applicable to the original charters of incorporation ; and upon principle and authority they apply with equal force to any amendment or modification of the charter as well as to the original charter. Though the Legislature may have the reserved power to amend or modify a charter of incorporation, it can no more force the corporation to aceept such amendment or modification, than it could have forced upon them the acceptance of the original charter without their consent. Under the reservation they can repeal or *599 destroy the charter, without any consent on the part of the corporators, but as long as they remain in existence as a corporate body, they necessarily have the power to reject an amendment or modification of their charter. The power reserved by the Legislature gives the right certainly to repeal or destroy, but so far as the right to modify or alter is concerned, it is nothing more than the ordinary case of a stipulation that one of the parties to a contract may vary its terms with the consent of the other contracting party. These principles grow out of the nature of charters or acts of incorporation, which are regarded in the nature of contracts. The amendment or modification must be made by the parties to the contract, the Legislature on the one hand, and the corporation on the other, the former expressing its intention, by means of a legislative act, and the latter assenting thereto by a vote of the majority of the stockhoders, according to the provisions of its charter, or by other acts showing its acceptance.
The reservation of the right to alter, amend or repeal the act by which the corporation is created, may be prudent and salutary ; but it seems to be a necessary implication, that if the Legislature should undertake to make what in their opinion is a legitimate alteration or amendment, the corporation has the power to reject or accept it, whatever may be the consequences. One consequence undoubtedly is, that the corporation cannot conduct its operations in defiance of the power that created it; and if it does not accept the modification or amendment proposed, must discontinue its operations as a corporate body. But such amendment or modification cannot be forced upon the corporation without its consent. Sage, &c. v. Dillard, &c., 15 B. Mun. R. 340; Allen v. McKean, 1 Sumner’s R. 277; Durfee v. Old Colony and Fall River R. R. Co., 5 Allen’s R. 230. Every amendment or modification of a charter of incorpora *600 tion is nothing more than a neio contract, which is not binding upon the corporate body until accepted by them.
Applying these doctrines, which seem to he well set-tied, to the case before us, it is manifest that the Bank °f the Old Dominion cannot be held bound by the acts 0f 1862 as amendments of its charter ; the facts agreed being “ that neither the board of directors nor,the stockholders of said bank ever accepted any change or modification of the charter of said bank subsequent to the 24th of May 1861.” This would be true upon the authorities cited, even if the Bank of the Old Dominion had been located within the territorial jurisdiction of the Richmond Legislature. But when it is remembered that this bank was located at Alexandria, which was taken possession of by the Federal authorities on the 24th May 1861, who held such possession until the close of' the war; that the restored government of Virginia extended over the city of Alexandria during the war and at its close ; that the majority of its stockholders, both in number and amount, resided in Alexandria and in States north of the Potomac; that a majority of its directors lived in the city of Alexandria and acknowledged allegiance to the so-called restored government; in the light of all these facts, it is manifest that this corporation thus situated in respect to its location, its stockholders and board of directors could not, in .any respect, be affected by any legislation of the Richmond government. That government, it is true, as a defacto government, exercised its authority within the limits of its jurisdiction, over all matters, civil and local, and obedience-to its authority was not only a necessity, but a duty. Thorington v. Smith, 9 Wall. U. S. R. 1. But its jurisdiction could certainly not be extended beyond its territorial limits, into sections of the State in the permanent occupancy of the Federal armies, and under the acknowledged authority of the so-called restored government of *601 Virginia. Bank of the Old Dominion v. McVeigh, 20 Gratt. 457.
It is no answer to this view that the branch bank at Pearisburg was within the territorial jurisdiction of the Bichmond government, and subject to its authority. This bank was not an independent corporation no charter ; it was but a branch of its mother bank at Alexandria, subject to its charter. It was but the agent, the mother bank being its principal. It could do no act to bind its principal, without the consent and authority of that principal. Nor could the Legislature authorize the branch bank which owed its existence to the charter of the mother bank, to issue small notes, or to do any other act as a bank, without the consent of the mother bank. The only authority which the Legislature could exercise was that which it reserved under the power íé to repeal, modify or alter” the charter of the mother bank. I have already shown that this was not done by the acts of 1862, which could not operate upon the Bank of the Old Dominion as a change or modification of its charter. - It had
But there is still another view of this case, which according to the principles settled by this court in the recent case of Bank of the Old Dominion v. McVeigh, 20 Gratt. 457, would seem to be conclusive. The obligation of the plaintiff in error was to pay to the Bank of the Old Dominion five hundred and sixty-one dollars and seven cents in gold, or its equivalent. He is seeking to discharge that obligation with the depreciated and worthless notes of the branch bank of the Old Dominion at Pearisburg, which he purchased for that purpose, with the knowledge that the defendant in error repudiated the same. The authority to do this is derived, it is claimed, under the § 16, ch„ 58, Code 1860, and the act of May 16th, 1862. ‘ The provision of the Code is as follows : Though a bank have a branch, all its notes shall be signed by the president and countersigned by the cashier of the parent bauk. All such notes shall be received in *602 payment of debts to the bank, whether contracted at the Parent bank or branch.” The act of May 1862, provid*nS ^or issue of notes of less, denomination than five dollars by branch banks, provides that “notes hereby authorized to be issued may be signed by such officer or officers of such bank or branches as may be designated for that purpose by the respective boards of directors.” It is shown by the facts agreed, that the notes tendered in payment of the debt due, were notes signed by the president and cashier of the branch bank. How, the obligation of the plaintiff in error was to pay the sum of $561.07 in gold, or its equivalent. It being a debt due to a bank he might discharge it in the notes of the bank or its branch. But ivhat notes are the banks required to receive in payment of debts “whether contracted at the branch bank or parent bank ? ” Only notes which are signed by the president and countersigned by the cashier of the parent bank. 4 ‘All such notes (i. e. notes signed by the president and countersigned by the cashier of the parent bank), shall be received in payment of debts to the bank, whether contracted at the parent bank or branch ” is the language of statute. The notes tendered were such notes as the law required the bank to receive in payment of its debts. Under the contract sued upon the obligation could only be discharged by the payment or tender of gold or its equivalent, or by payment or tender of notes of the bank or one its branches, signed by the president and countersigned by the cashier of the parent bank. The act of May 1862, does not in terms require the banks to receive the small notes issued under its authority to be received in payment of debts due to it: but if it did do so in terms or by necessary implication it would be void, because it would impair the obligation of contracts, in requiring the bank to receive, not the notes which, under its charter it agreed (by accepting the conditions of the charter,) to receive in payment of debts due to it, but to receive a worthless currency issued *603 by its branch without its consent, not in conformity to its charter, but in direct violation of it. Surely it cannot be held that under the reserved power of the Legislature “ to alter, modify, or repeal a charter of any bank,” it has the power to change or modify an act of incorporation in such a way as to affect in a material particular, a contract which the corporation has entered into with a third party. Such an exercise of legislative power would be unconstitutional and invalid, because it would impair the obligation of a contract. 5 Allen 247-'8; 2 Gray 547; Bank of the Old Dominion v. McVeigh, 20 Gratt. 457.
But it is argued by the counsel for the plaintiff in error, ■that it is now too late for the parent bank to raise the question as to the validity of the acts of 1862, because after the war the parent bank took possession of all the assets of the branch, and thereby sanctioned and ratified its transactions.
It is shown by the facts agreed, that the operations of the branch bank had been unprofitable, those operations having been made in Confederate currency ; and that while the assets turned over to the parent bank were about $10,000, the branch bank was indebted to the parent bank in the sum of $37,000. The parent bank had the unquestioned right to appropriate the assets of the branch bank, but I cannot perceive how the exercise of a rightful act, could give its sanction to operations of its branch, done not only without the authority of the parent bank, but under an act of the Legislature which was in itself invalid, so far as it could affect the parent bank. I am of opinion, upon the whole case, that the judgment ought to be affirmed.